Case number 20-5280 National Association of Postal Supervisors of Balance v. United States Postal Service and United Postmasters and Managers of America. Ms. Graber for the balance, Mr. Genda for the evidence. Good morning. When you're ready, Ms. Graber, you may proceed. Thank you, Your Honor, and may it please the court. The Postal Service now concedes on page 17 of its brief, quote, NAPCS may seek non-statutory review. That issue is no longer in dispute. The Postal Service then asserts that the statutory provisions at issue here are not limits on the Postal Service's authority. I'd like to spend my time today explaining why the statutory standards regarding supervisory differentials, compensation comparability with the private sector, and the rights of the postal supervisory and managerial personnel to be represented by NAPCS are clear and mandatory and how the Postal Service has violated those mandates. And our dispute with the Postal Service has two parts. The first concerns the 2016 to 2019 field pay package, which violates statutory mandates that the Postal Service pay a supervisory differential and that it establish compensation that is comparable with the private sector. Second, I will turn to why the statute permits NAPCS to represent all supervisory and managerial employees, including postmasters, and why the Postal Reorganization Act does not distinguish between any category of supervisory and managerial personnel based on their reporting structure or any other category. Regarding the substance of the 2016 to 2019 pay plan, in the 1979 NAPCS decision, this court held that the very same provisions at issue here regarding the supervisory differential and pay comparability established standards that are clear and mandatory and reviewable under non-statutory review. This court held that the Postal Service was required to implement some supervisory differential and consider and fulfill, in good faith, pay comparability. The complaint here plausibly alleges that the Postal Service has failed to meet these requirements. As we point out on page 13 of our reply brief, this court already interpreted the Postal Reorganization Act to require that, quote, all, end quote, supervisory and other managerial personnel must receive some differential in compensation compared to the clerks and the carriers that they actually supervise. Isn't there a differential? The problem is just simply that the employees, the clerk or other employees who are the supervisees, can earn overtime that the supervisors can't? No, Your Honor. As we explained at paragraphs 38 and 39 of our complaint, for thousands of supervisors, there is actually no differential at all, even before you take overtime into account. With regards to base pay, these supervisors earn less than the employees in the clerk or carrier grade that they supervise. And the reason is that the Postal Service has benchmarked a very low supervisory differential against a lower paid grade for the clerk employees. And thousands of supervisors represent higher paid carriers. So for these employees, even before you get into overtime, there is simply no supervisory differential. And this court was clear in the 1979 opinion that all supervisors must earn some differential compared to the employees that they actually supervise, not again just compared to one of the lower paid clerks or carrier grades in the system. Do you think that our opinion held that every single supervisor has to have a differential or else there's a violation of the statute? That is the import of the court's remand to the Postal Service when it determined that it could not know from the affidavit that the Postal Service had filed whether, quote, whether all supervisory and other managerial personnel actually received some kind of differential. It's also clear from the statute, which does not say some supervisory and managerial personnel must earn the differential. So, yes, I do think that all supervisory and managerial personnel must earn some differential. And I guess the question is, is it when there's a comparison under the statute between supervisor and other managerial personnel and those they supervise, can that comparison be made in gross or does it have to be made for every single office or every single supervisor? And I take it that the Postal Service is saying, well, it can be made in gross. Again, I think turning to the court's 1979 opinion, what it said is that it couldn't tell and it had to remand to the Postal Service. It could not tell whether all supervisory and other managerial personnel actually received some kind of differential. And it made clear that that differential should be pegged to the employees and the clerk in the carrier grades that the supervisors actually supervised. So, it seems clear from that opinion and from the language of the statute that, yes, it does have to be all supervisory and managerial personnel, not just in gross. And I think it's an issue that can also be considered on the district court on remand as to which supervisory personnel, as to how the supervisory differential has actually played out. I had a question, Ms. Graber, about one of the other issues about whether the association was unlawfully denied participation in setting the pay for the postmasters. And I guess, in part, this is a question that I think part of which also applies to the headquarters and area employees. If the Postal Service has not presented a pay plan that covers the postmasters, does NAPS have any dog in that fight? They just haven't presented the plan, have they? Your Honor, whether or not the Postal Service has presented a plan is not a fact flood in the complaint, but the consultation rights apply more broadly than just to individual pay plans. I can represent that the Postal Service did present a plan for the postmasters, and we would be able to add that to our complaint if necessary on remand. But if you look at the statute, Section 1004C requires monthly consultations to implement the provisions of the statute. And furthermore, consultation is required for the implementation of any given pay plan, not just for the negotiation of the pay plan. So I had a question about the statutory provision, the Section 1004B, which the Postal Service argues, I gather, Mr. Janda can correct me if I'm wrong, but I gather that they're saying at least it's susceptible of being read to set up three mutually exclusive categories. Your argument is, no, I take it that you view them as nested categories. There's a supervisory organization that represents a majority of supervisors, or an organization other than an organization representing supervisors that represents at least 20% of postmasters, or a managerial organization other than a supervisor or postmaster organization representing a substantial percentage of managerial employees. When I read that, I actually don't see it as setting up three mutually exclusive categories. I see it as setting up nested categories. But my question is, like, why? It's really hard to imagine what this is about in the real world and why it would be written this way. I take it to be saying postmasters can be part of a supervisory organization, managerial employees can be part of a supervisory organization. If it's a standalone postmasters organization, the representation only triggers if it's at least 20%. Why would they have these different participation thresholds and why would they contemplate organizations that have amalgams of different types of employees to some extent, but then not in other ways? I'm having a hard time understanding it. I do want to answer your question. I'm also mindful of my time. We'll give you more time as needed. As long as the panel has questions, we'll give you additional time. Okay, thank you, Your Honor. So some of the reason, I think, for the strangeness of the structure of the statute, as you've identified, is that the way the postmasters organizations were sort of shoehorned into the statute in 2003 was somewhat peculiar. But we agree with Your Honor that the nested structure is the reading of the statute that conforms to the statutory text. And what it does is that it gives all supervisory and managerial employees the right to join together in one umbrella organization if they choose. And if they don't, then they can form more group-specific organizations, as you've identified. The fact of the matter is that there has never been a managerial organization. Employees have been satisfied with the representation that they've chosen through the National Association for Postal Supervisors and through the postmasters organization. And that is permitted through the statutory structure that you've identified. What is very clear from that statutory structure is that there is no distinction made between employees who are headquarters and area employees and employees who operate in field positions. That's a distinction that the Postal Service has just read into the statute. And the Postal Service's position here is a fairly extreme one. What it's asking the court to do is give it the unreviewable total discretion to decide which employees can choose to be represented by NAPs and which cannot. And in doing so, it would give itself the power to not only deny NAPs arbitrarily, deny employees arbitrarily the right to be represented by the organization of their choice, but also really to destroy the supervisor's organization. And I want to emphasize that this is not a hypothetical. After briefing here was completed, the Postal Service announced a reorganization in which it realigned thousands of supervisory and managerial personnel who were in field positions into headquarters positions and then initially took the position that NAPs could no longer represent those employees. What it is really saying here is that it has the power to totally destroy the supervisor's organization. And in doing so, it could totally eviscerate the entire statutory scheme. And that cannot be the law. I see that I am over time. I have a series of questions, I guess, about related to this point. The statute doesn't define managerial employees, right? Correct, Your Honor. So how do we know what the difference is between a supervisor and a managerial employee? As Judge Pillard identified, for the purposes of the question before the court, it doesn't actually matter because NAPs does have the power to represent all supervisory and managerial employees as the umbrella organization. So the distinction for our purposes today is one without a difference. Well, I guess what I'm trying to get at is the statute speaks in terms of, in its definitions, under 1004 I-2. It says members of the supervisor's organization means employees of the Postal Service who are recognized under an agreement between the Postal Service and the supervisor's organization as represented by such an organization. I never saw in your complaint an allegation of who the Postal Service has agreed that your organization, your client, can represent. I saw an allegation that the Postal Service said that they believed that you could not represent Postmasters, but there's no allegation as to exactly who the Postal Service has agreed you could represent. Did I miss that? No, Your Honor. There has not been a present agreement between the Postal Service and NAPs since 1981 when the previous agreement expired. But what is true is that under 39 U.S.C. 1205, the Postal Service has been deducting the dues of the supervisory and managerial personnel who have chosen to join NAPs from their paychecks. There is not a present agreement between NAPs and the Postal Service. But if you allow the Postal Service to take the provision that you identified in 104 I-2 to give it the power to agree to anybody or nobody to be represented by NAPs, it's taking this narrow definitional provision and allowing it to totally override the entire statute. And that simply can't be right. This Court has already found that whether or not the Postal Service has engaged in appropriate consultation is reviewable. And to allow the Postal Service a backdoor out of that consultation process and out of reviewability for avoiding the consultation process is entirely inconsistent with the statutory scheme and with this Court's precedent. I'm sorry. Go ahead. Go ahead. I just want to make sure I understand. What do you think the issue is? I'm trying to make sure I understand your position. You're lumping managers and supervisors in one category. And what are you saying about a postmaster? Are you saying they are managers and supervisors or not? Postmasters are a subset of supervisory and managerial personnel under the statute and, therefore, can choose to be represented by the supervisory organization. Just to be nitpicky about that, I understand that they are a subset of managerial and that some of them are a subset of supervisory. If you're a postmaster that doesn't have employees that you supervise, I had the impression that that was the case in some places. That's correct, Your Honor. And then your claim is there's a separate issue with respect to the headquarters and area employees. It's a different issue. You're saying that the Postal Service simply excludes persons who are working in those areas, right? Mostly. It doesn't take a fully consistent position. It actually does... So you're saying to the extent that they claim that those persons cannot be covered by the benefits of the statute, they're wrong, wherever it's happened. Yes, Your Honor. That's not the managerial supervisor postmaster issue. They're different issues. The issue of the postmasters versus the headquarters and managerial employees are distinct. I do want to clarify... I'm sorry, headquarters and area employees. I do want to clarify that headquarters and area employees are supervisory and managerial employees under the statute as our postmasters. That the employees about which you're concerned are the supervisory and managerial employees at headquarters or in the areas because there are employees at headquarters presumably who aren't managers or supervisors. Presumably there are employees at headquarters who are members of the senior executive service, correct? Or who are under collective bargaining agreements. That might be true, Your Honor. I'm not 100% positive about that. But yes, we are concerned about... That's a different issue is all I'm trying to make sure I understand. You're saying they are claiming they can exclude anyone who's in a place called headquarters or area because that's where they are, no matter what their job is, right? Correct, Your Honor. So just as far as trying to figure out how the statute works, 1004H talks specifically about postmasters and postmasters organizations. And then when I look at 1004B and setting up the kind of three different ways that an organization can be recognized, I see that Congress used when they talk about a managerial organization. They call it other than an organization representing supervisors or postmasters. Congress used an or, not an and. So I guess, unlike Judge Pillard, my inclination is to see these as three mutually distinct categories and not overlapping ones. Given that postmasters organizations seem to have kind of their own set of rules and just... I don't really understand how those clauses in the parentheticals are doing any work. Unless you view these as three mutually exclusive groups. Tell me what's wrong with the way I'm seeing this. So under the nested interpretation that we think is the more persuasive or the really only textual interpretation of the statute, those parenthetical clauses are still doing work because they say that the postmasters organization or the managerial organization can form groups that do exclude, for the postmasters, that exclude supervisors and for the managerial organization that exclude supervisors and postmasters. So then that does continue to give those clauses effect while still allowing employees to band together in the largest group available to them, the umbrella organization, which is the supervisory organization. Well, suppose I believe that, well, maybe you do have an argument that that is a plausible reading of the statute. But I believe that the statute is ambiguous. If the statute's ambiguous, then how do we exercise non-statutory review when we only do so when the Postal Service is acting ultra-virus? And we said in the earlier 1979 case that where something was ambiguous, it falls outside of ultra-virus review. So this court in Aid Association for, so first of all, I have a couple of points I want to make about that. First of all, this court in Aid Association for Lutherans made clear that the scope of review contemplated by the 1979 decision is in all respects consistent with Chevron. So even if you did find ambiguity in the statute, the Postal Service's interpretation of the statute must still be within the reasonable range of interpretations that Chevron allows. And the Postal Service's decision particularly to exclude headquarters and area employees from being allowed to be represented by NAPCS is not within the reasonable range of interpretations because it just, it reads something into the statute that simply isn't there. Furthermore, if you were to find the statute ambiguous in this way and allow the Postal Service to create these three very distinct organizations, then the postal managers would have no representation because there is no managerial organization, and there never has been one as far as I'm aware. But that's not a problem with the statute. That's just a problem with those employees needing to form an organization, and they can go out and do so. But I do think that it sort of casts some skepticism on the Postal Service's position that Congress would have wanted there to be three separate organizations because it perceived there to be some inherent conflict between these groups. That's not how the statute or the Postal Service has been put into operation for the last 50 years. Is there a conflict between the groups? I mean, what about the potential for conflict between managerial employees and their supervisors, for example? That's not an issue that has any factual support behind it that the Postal Service has been able to identify. It's something that perhaps could be explored on remand if necessary. But the Postal Service can't simply assert it and declare that it must be true, particularly when the managers have been a part of NAPCS for such a long time. All right. Do my colleagues have any further questions? I guess my final question is I'm trying to get an understanding. Is there anything in your complaint or in the record that we can recognize that indicates that the Postal Service has acknowledged that NAPCS can represent managerial employees? So there was a concession by the Postal Service that NAPCS can represent some of the headquarters and area employees. Whether or not the Postal Service considers those employees to be managerial employees, I think the complaint is not clear. So I think that's the best answer I can give to your question, given the posture of the case. All right. Thank you, Ms. Graber. We'll give you limited time for rebuttal. And in the meantime, we'll hear from Mr. Ganda for the Postal Service. Thank you, Your Honor. And may I please report? Good morning. Good morning. Sean Ganda for the United States Postal Service. I'd like to start, if I can, by just taking a step back for a moment. I think it's important to understand the context here, which is that when Congress created the Postal Service as an independent agency in 1970, it decided that the provisions of the APA generally should not apply to the Postal Service's decision-making. And that was a decision that is consistent with Congress's broader determinations that the Postal Service has to have the freedom to control its costs and to manage itself efficiently, and that the Postal Service, and not the courts, and certainly not the plaintiffs here, are in the best position to weigh the many competing factors that are required for the Postal Service to try to achieve its many conflicting statutory goals of providing high-quality and effective service, of controlling costs, of doing all of that while charging reasonable and just rates, and managing – sorry, go ahead, Your Honor. I'm sorry, I didn't mean to interrupt you. Go ahead, Mr. Sims. And just that that's sort of a multidimensional balancing act that the Postal Service, Congress has recognized, is in the best position to achieve. So we have recognized some non-statutory review of Postal Service under this provision, and the district court suggested that it wasn't available here because the association had an option to request a second non-binding fact-finding panel, but you're not pressing that point on appeal. We are not, Your Honor. So with respect to the pay package claims, which I think is what that mostly goes to, our claim is twofold, or our argument is twofold. One is that these provisions that NAPCS relies on simply aren't limitations on the Postal Service's statutory authority, and so any claim under those provisions would not be cognizable in non-statutory review. And then second is that at the absolute most, and maybe this is what the 1979 NAPCS decision recognizes, those provisions may require the Postal Service to consider those goals in good faith, and here the complaint makes clear that the Postal Service considered the goals in good faith. There's an explicit supervisory differential adjustment in the challenge pay package of 5%, and the comparability requirement, I think the complaint recognizes, you know, not only does the Postal Service evaluate that internally, but in this case, the Postal Service hired an outside expert to conduct a survey to look at the comparability provision. And that's sort of above and beyond, I think, what this Court and the Supreme Court has said that agencies have to do, even when faced with the prospect of APA review, and it certainly suffices for the sort of low bar good faith consideration of the requirement. That is all that NAPCS can get review of in this case. You assert in your brief that the Association didn't allege that the Postal Service failed to fulfill any of its obligations with respect to consultation and fact-finding, but as I read their complaint, they are alleging that, and that at a minimum, as you say, there's this sort of procedural requirement that the Postal Service at least consider in good faith the views of NAPCS. And they do allege, as I see in paragraphs 53 and 54, page 17 of the appendix, that there was a failure in that regard. And what's your response to that? So although NAPCS does make those allegations in the complaint, there's not plausible facts in the complaint that could support those allegations. And so with respect to the comparability requirement, the survey itself is more than enough to satisfy the requirement to consider comparability in good faith. And even beyond that, the Postal Service has an in-house compensation and benefits department that tracks and evaluates the comparability requirement in those trends. And I don't think there's any sort of plausible facts to suggest that the Postal Service didn't consider that either when issuing the pay package or when going through the consultation and administrative mediation process. And to the extent that NAPCS's argument is that a fair allegation of failure to consider is enough to survive a motion to dismiss in this context and to get into sort of evaluating the administrative record and doing whatever the next steps that they think would be appropriate in this litigation are, that just underscores how much NAPCS's view of how this non-statutory review process ought to go would undermine Congress's determination that judicial review generally isn't appropriate. But let me just ask, I mean, I don't think this is a separate count, but the Association alleges that the Postal Service has broadly failed to engage with NAPCS and failed to provide information required by the statute. They haven't furnished details of their decision to implement their pay programs. They haven't provided information on which they're based, but perhaps more sort of significantly from their perspective that when the Postal Service has rejected their recommendations, the Postal Service has an obligation to provide reasons to NAPCS. And my understanding is that you don't dispute that that hasn't taken place, you know, to provide an explanation to the Association if it rejects any recommendations. Am I wrong? Or do you think the recommendations are illegitimate because they purport to represent members they can't represent? Or what's your view of why those explanation obligations have been met? So I think initially, that's not an issue presented in this appeal. NAPCS hasn't briefed that issue, hasn't pressed any argument in this appeal on that issue. That being said, to the extent that the Postal Service is required to provide reasons, I can tell you it's not alleged in the complaint. But the Postal Service, when it issued the final pay package, provided, I think, an eight-page letter that goes through the fact-finding panel's recommendations, explains which ones it is accepting, which ones it is rejecting, and provides written reasons for each of those. And so, again, it's not alleged in the complaint, but the Postal Service did provide that written sort of decision explaining what it was and wasn't accepting from the fact-finding panel. And so, to the extent that is a statutory requirement, the Postal Service certainly fulfilled it in this case. Is that letter before us? Can we consider it? Has it been incorporated into the complaint? So, Your Honor, our argument might well be that had NAPCS pressed that claim, or pressed that argument, that the letter is appropriately incorporated into the complaint and could be considered on a motion to dismiss. We haven't put it in the record. It wasn't in the record in the district court. It's not in the record before this court, because NAPCS hasn't pressed that as an independent claim. I intended to ask appellant's counsel that, and I forgot, but I don't see a separate count in the complaint saying that the Postal Service violated the statute by giving an inadequate explanation. And I also didn't see any requested relief in the complaint of requesting a remand for anything relating to requiring the Postal Service to provide more robust explanation or rejecting the recommendations. So that's why you're saying that the issue isn't before us. That's correct, Your Honor. I think neither in the complaint nor certainly pressed in NAPCS's brief in this appeal. And so even if there are portions of the complaint that gesture in that direction, it certainly hasn't coalesced into an argument for relief. Counsel, my understanding is fairly straightforward, that the obligation with respect to paid differential is as to supervisors and the employees they supervise. And you haven't satisfied that. You haven't shown that you satisfied that requirement. Maybe in some cases you have, in other cases you clearly have not. And so there's certainly a remand there. Am I wrong? If that is my interpretation of the statute, then it has to go back on that, right? So I cannot tell you that every supervisor earns more in base pay than every employee they supervise. And if that's your interpretation of the statute, then this ought to go back. It really is not as onerous as you're suggesting, unless the Postal Service is more screwy than I would have imagined, because most employers put supervisors in categories as to their employees. So you're not talking about Joe Blow and the two people he supervises. That's not what the inquiry would be. It would be whether certain groups of supervisors are making more than the groups of employees that they're supervising. It's not an onerous requirement. My understanding of the record, just so you can know what my concerns are, is that you certainly have not shown that. It may be the case in some instances, but you have not satisfied that requirement, if I am right, that that is the requirement. So that's one thing, right? So I think that depends on exactly how your owner understands the requirement. So what the Postal Service did in this case, and what it's done, my understanding is, for a long time, is it chunked up supervisors into different groups. And for each group, it picked a benchmark supervisee employee, generally the most populous supervisee employee, and then added the supervisor differential to that employee's base salary to create the minimum salary for the supervisor. And there may be some supervisees in particular circumstances who earn more in base pay, for whatever reason, than their supervisor. But I think NAPCS's argument is that that's not okay that every supervisee must make less than his supervisor. It does seem like if the statute says that there should be a differential between supervisory employees and the employees they supervise, that the methodology that you describe is fine up until the choice of some median or plurality of the supervisees. But the point is, why wouldn't the necessary benchmark be the highest paid of the supervisees? Since the point is, there has to be a pay differential between the supervisory employees and the employees they supervise. So, I think 1004A is the Robin Stasher correction, Your Honor. And all that says is that, number one, it's a policy goal. Right, right. But beyond that, all it says is that it shall be the policy of the Postal Service to provide adequate and reasonable differentials in rates of pay between employees in the clerk and carrier grades and supervisory and other managerial personnel. And so the statute speaks in gross terms between the two categories. The Postal Service, in this case, it broke it down even further by looking at, I think, four different groups. That's my understanding. I don't want to say that. Definitely correct. But by a number of different groups of supervisors and their supervisees. And that, I think, is more than enough to satisfy the statutory requirement. But that policy argument, you're not really pushing that, are you? There's another part of the statute that makes it clear it says shall. Actually, I don't think that's correct, Your Honor. So, I'm not sure if you're looking at, I'm not sure which part of the statute you're looking at. 39 U.S.C. 1001C says the Postal Service shall achieve and maintain compensation that's comparable. Right. Compensation. That, again, is a policy goal. It doesn't have a policy. Mandatory language. So, the title of Section 101 is Postal Policy. And I think it's obvious from the context. Then it says what Postal Policy will be. The Postal Service shall achieve and maintain comparable compensation, etc. It doesn't say the Postal Service will strive to reach a policy of. It says they shall. I think in the context of Section 101, if you look at it, we have seven different sort of broad policy goals that the service should be operating as a basic and fundamental service. That the Postal Service shall provide a maximum degree of effective and regular Postal Service to rural areas. And I think in that context, it's clear that these are broad goals that the Postal Service is required. The way we initially construed the statute to say, you know, do your best, I didn't think that was our initial interpretation of the statute many years ago. So, I think your interpretation, this court's interpretation of the statute is that the Postal Service has to give good faith consideration to these goals and has to arrive at a result that thinks in good faith appropriately balances the goals. And again here, I don't think there's any question that the Postal Service did that. There's an explicit supervisory differential adjustment in the package. And on the comparability piece, the Postal Service went so far as to hire an outside expert to look at comparability of pay between the Postal Service and the private sector. But it could, I mean, I think their allegation on comparability is the, and I thought our court had spoken to that as well, there is an obligation to attend to this. And I thought their claim is, which is not frivolous, that it was bogus. There wasn't any serious effort to look at the private sector and reach comparability determinations. We certainly said there is such an obligation under the statute. You're right, where you end up, if you've done it in good faith, you certainly have a whole lot of room to run. But you certainly don't have a whole lot of room to just do it willy-nilly and be subject to a claim that you didn't do this seriously. You haven't seriously looked at the private sector to make the determination the statute requires. So I have two responses to that, Your Honor. The first is that I think there's just no question in this case that the Postal Service looked at these obligations in good faith. I mean, they hired an outside expert on comparability to evaluate, to do an independent study to evaluate the comparability of the eight, my understanding, most populous NAFTA-represented positions. And that goes well above and beyond what this court or the Supreme Court has held is required, even under APA review. And so that absolutely satisfies whatever good faith requirement there is. And to the extent that even in light of that study or in light of the explicit supervisory differential adjustment, NAFTA's conclusory allegations that the Postal Service didn't do it in good faith could be enough to get them over a motion to dismiss, that just undermines Congress's judgment, which I think this court articulated very, very clearly in the 1979 NAPS case, that this isn't something that is generally subject to judicial review. Yeah, I appreciate that, you know, that there was some effort made. And the allegations before us are that the assessment was very, very partial because they looked at eight of approximately a thousand positions. And I take your pushback on that as well. There were eight significant positions for purposes of NAPS. But the other thing they claim is that the Postal Service substantively just does not meet this requirement because they're not giving annual raises. So they're just in a really structural and persistent way tying into an approach to pay that just is not comparable. And that the statute requires that the Postal Service shall achieve and maintain compensation that's comparable to the rates and types of compensation paid in the private sector. So how is it comparable and how can it be maintained as comparable if there's not even, you know, increases, periodic increases that are standard in the private sector? So I think, again, sort of crippling around the edges of the specific portions of how pay is calculated, and whether that's bonuses, whether it's annual raises, whether it's locality pay, none of that is in the statute. The statute doesn't require any specific parity between the Postal Service and the private sector. And it doesn't require any sort of particular features of the pay package to achieve that goal. And so to the extent that the Postal Service sort of evaluated comparability and made a good faith determination, which is clear from the record they did in this case, that the package that they were issuing was a good faith effort to satisfy the comparability requirement. When you refer to good faith, and I don't have any reason to question, you know, as a subjective matter, any good faith on the part of the Postal Service, but they didn't need to say you need cost of living increases, you need, you know, regional, you know, adjustments for where it's really expensive to live, because they use a shorthand comparable to the private sector. So why doesn't, if there's no explanation of, oh, we do that in this different way in our pay structure, then how can the association employees, members, be confident that it actually was even thought to be comparable? Sarah, I think there is, of course, an extensive consultation and administrative mediation process that the party is engaged in in this case. And that's the process where the Postal Service can provide reasons to NAPCS. It did provide reasons to NAPCS in this case. But even the fact finders there thought that the Postal Service had not fulfilled its obligation. I'm not sure that that supports you. So that was the finding of the mediation panel, but the Postal Service, even after that finding, provided a layer to NAPCS explaining how they considered the requirement and why I believe they met the requirement. And I think, again, this all goes back to the fact that Congress has determined that the Postal Service is in the best position to weigh these competing factors. If weighing them at all and giving an explanation. I know we've kept you up here a long time. I had really wanted to hear your view, though, on the categories that the association claims were just completely categorically overlooked. What is the position of the Postal Service on the headquarters and area employees being excluded from the pay package? And what is the position on the statute that allows postmasters to be represented by a supervisor organization? Yes, so starting with the headquarters and area employees, the Postal Service's view is that most headquarters and area employees are not eligible for representation by NAPCS. They're non-supervisors. That being said, even the complaint recognizes that the Postal Service has recognized that some area and headquarters employees are supervisors, are eligible for representation, and has excluded those employees from the 2016-19 area and headquarters pay package. And my understanding is included those employees in the recently issued pay package that was developed after consultation with NAPCS. And so the Postal Service isn't drawing any absolute distinction between area and headquarters employees and field employees in terms of eligibility for representation. And again, I think it's under non-statutory review. It's NAPCS's burden to show that the Postal Service has plainly violated the statute. And there's just nothing in the complaint that explains which employees NAPCS thinks have been improperly excluded from representation. I thought it was pretty clear. They represent supervisory postmaster managerial employees. And as you just said, the Postal Service excluded them from the past pay package to the extent that they were area or headquarters employees, even if they were, or maybe because they were, represented by NAPCS. So there's like a carve out there saying we are generally looking at area and headquarters employees, but if you happen to be NAPCS represented, we're not going to include you. Is that right? And I'm trying to make sense of that. So my understanding, Your Honor, is that there are two separate pay packages. So one is for area and headquarters employees that carves out those employees who are represented by NAPCS. And the other is for field employees and those area and headquarters employees who the Postal Service recognizes as represented by NAPCS. So those are the two pay packages. And NAPCS is consulted on the pay package for field employees and for area and headquarters employees who are represented by NAPCS. And so the distinction that the Postal Service is drawing is between NAPCS-represented employees and non-NAPCS-represented employees, or employees that the Postal Service doesn't think are validly represented by NAPCS. And you can look through the complaint. There's just nothing in the complaint that says, I'm sorry, run that by me again. So there are two pay packages. One is area and headquarters employees and the other is field employees. Correct. And those pay packages generally include supervisory and non-supervisory employees generally, but they exclude supervisory managerial employees represented by NAPCS? No, Your Honor. I'm sorry. That is what I said. So my understanding is there are two pay packages. One is area and headquarters executive and administrative service employees, but not those that the Postal Service recognizes as represented by NAPCS, just the other ones. And when you say EAS, that means typically supervisory managerial? I think not necessarily, Your Honor. But a bunch of them are? Some of them are, yes. Okay. My understanding is many fewer in headquarters. There are many more, whether it's SES or whether it's professional or administrative employees rather than supervisory managers. And then the other pay package, and this is the one that was issued, sort of the challenge one, and then also the one that was recently issued that we filed a letter about, that that pay package covers all field EAS employees and the headquarters and area EAS employees who the Postal Service believes are validly represented by NAPCS. And NAPCS has been consulted on that package. I don't think there's any question about that. The second package, just so I have it right, is the field employees and the area and headquarters employees that NAPCS represents? That is correct, Your Honor. That is my understanding. And I think at the end of the day, the sort of fundamental point is that just looking at the face of the complaint, NAPCS concedes that the Postal Service has excluded from the unconsulted package those employees that the Postal Service believes are represented by NAPCS. And there's just no actual allegations in the complaint that could support the notion that the Postal Service has plainly violated the statute in drawing the distinction they drew. So it bunches all the NAPCS employees, whether they're area and headquarters or field, all the NAPCS represented employees into the field package, just as a way of saying everyone we're dealing with with the NAPCS is going to be in the field package, even if they're not field employees. That is my understanding, Your Honor. And the problem is we don't know who you're... I'm listening to you carefully. We don't know, you say, who the Postal Service determines the union represents. But in that answer, I think what you're saying is you're making some determinations with regard to certain supervisors and managerial employees that you will not recognize or you say the union cannot represent. It's totally unclear. Are you conceding now? Let me see if I can clear it up this way. Are you conceding that the union can represent supervisory and managerial employees in headquarters and area offices? There's no doubt in your mind they can. They represent them. You have to consult with them. You agree? So Your Honor, my understanding... Yes, the union can represent managerial and supervisory employees in any area and headquarter situation. We are not objecting to that, and we have an obligation to consult with them if they do represent those employees. We cannot exclude from representation employees who are supervisor managers merely because they are in area and headquarter positions. Right? Yes or no? Are you conceding that or not? So I think there were two different questions there. No, there's not. There really is not. I'm going to try and make one question because I really am curious what your answer is. Are you conceding that the union may represent supervisors and managers in area and headquarters positions and that the Postal Service has an obligation to consult with the union with respect to those employees? Our understanding of the statute is that employees may not be excluded from valid representation merely because they are headquarters or area employees. Do you concede that supervisors and managers in headquarters and area positions can be represented by the union and you have an obligation to consult with the union with respect to those employees? Do you concede that or not? I don't think I can broadly concede that, Your Honor. Why? Because I think supervisory and managerial employees is a very broad category, and it's not necessarily clear from the statute that NAPCS is even entitled to represent managerial employees as distinct from supervisory employees. And my understanding is that the Postal Service has recognized a list of positions of headquarters and area employees who NAPCS validly represents. It has excluded those positions. I mean, that's self-serving with validly represents. That's the whole point. Everywhere else, if they're supervisors and managers, they're not in headquarters, they're not in area, you're conceding, you're not doubting that the union may represent those employees and that you must consult with respect to them, right? Everywhere else, if you're a supervisor or a manager, the union can represent those employees and you must consult, right? I do not know that that is correct, Your Honor. Just to focus it, I think, on you were resisting managerial, and I think that gets back to the three different categories and whether they're mutually exclusive or not. So let's just keep it simple and say supervisory employees that are headquarters and area employees. Those are people that NAPCS is entitled to represent and with respect to which the Postal Service, therefore, has an obligation to inform, discuss, consult. We have not made any argument that supervisory employees at area and headquarters are not validly represented by NAPCS. No, but you just, no, no, wait, Judge Fuller, answer Judge Fuller's question. Do you agree with what she just said? Yes or no? Does that take the issue off the table for me? Because when I would, if Weber is writing this, that's pretty easy. That ends the big question. Do we agree or not? I don't know that I can broadly agree to that statement. What I can say is that there is not a single thing in the complaint that makes out an allegation that there is some group of supervisory employees that are at area or headquarters that are not being consulted or who are not being covered by the consulted pay package. I think there is an allegation in that regard. They say that the pay package, the 2016-2019 pay package concerned only association members designated as field employees, excluding 7,500 of its members that the Postal Service treats as headquarters or area employees. And so they're saying we have a big chunk of membership that, you know, I recognize there's a separate legal position that the Postal Service is saying with respect to managers, but that includes managers and supervisors that we represent that are headquarters and area employees and everything else the Postal Service says. And you're not including them and you're not recognizing. I thought the fight was over. I thought your position somewhere along the line was that you were trying to distinguish between supervisors and managers on one hand and professional and technical on the other. I thought that was the fight, but maybe I just completely missed this case. That's why I'm trying to get you to either concede or not that the fact that you're a supervisor and manager and you're in an area or headquarters position, you still can be represented by the union and the Postal Service must consult. So I don't think I have the ability to broadly concede that. Broadly? I don't want you to do it broadly or narrowly. I just want you to concede that sentence. That's all. I do not believe I can concede that. And why is that wrong? So I think there's two things. One is that this court doesn't need to get involved. Indulge me, okay? Indulge me. Forget whether I have the authority to decide something. I'm trying to understand the case. So I don't want you to tell me what I can and cannot decide. Just tell me whether you agree that the union can represent area supervisor and managerial employees and the Postal Service is obliged to consult with respect to those employees if the union does represent them. So I agree that the mere fact of being an area or headquarters employee does not exclude someone from valid representation. I think the fight in this case is over the exact scope of that valid representation with respect to area and headquarters employees. My understanding is that the Postal Service has recognized a set of area and headquarters supervisors as validly represented by NAPCS and has consulted with NAPCS with respect to those employees. In what context? With respect to what pay package? With respect to the field pay package? So my understanding, Your Honor, is that those employees were carved out of the 2016-19 area headquarters package and were included in the recently issued 2021, I don't know that it's called the field pay package, but it's the pay package that includes all employees that the Postal Service recognizes as represented by NAPCS. Okay. But before your 28-J letter, we had nothing showing that they were included in anything. Correct, Your Honor. But I think the complaint admits they were excluded from... Right. And so your view is if they were excluded, then there's no... We'll just put these people by the side of the road and then we won't violate our consultation obligations because we're just not giving them a package? So I don't think that's what NAPCS' claim is getting at. I think NAPCS' claim is focused on the issuance of the 2016-19 area and headquarters pay package. And my understanding, if I could just back up for a second... And your view is, so your threshold view is they don't have a dog in that fight because that doesn't even cover any of their people. It doesn't actually affect the terms and conditions of their employment because even though they may work in headquarters or work in what, for other administrative purposes, USPS denominates area, they actually are treated for purposes of a pay package as not there. And therefore, they don't even have standing to kind of address the headquarters and area package. Is that right? So I don't think it's an issue of standing, Your Honor. I mean that loosely. I mean that they don't have... They're not included and so they're not harmed in your view. Yes, sort of. So if I could just back up for a second. This is my understanding of NAPCS' claim. NAPCS says you issued this 2016-19 area and headquarters pay package for area headquarters employees. You excluded from that pay package certain employees that you recognize are validly represented by NAPCS. And that is true. But I think what NAPCS' claim is, is that they believe they represent additional area and headquarters employees who were not excluded from the pay package and that they ought to have been consulted with respect to those employees. And that is how I understand NAPCS' claim. And when you say that the additional employees, you're talking about managerial employees and this is because of the tripartite reading under 1004-I-2 or something? So I don't have the information on sort of the exact employees who were excluded and who were included and who NAPCS believes they represent. And I think fundamentally that is a problem with the complaint. The complaint doesn't include... It could include a paragraph that says, here are the five job titles of employees at area and headquarters that we think we represent. Here are their job duties. Here is why we validly represent them and we should have been consulted with respect to them. The complaint doesn't do any of that. All it says is that we disagree with who you excluded. But that's not enough to plausibly allege a plain violation of the statute because there's just no supporting facts. I really also want to hear your view on the provision that requires the Postal Service to recognize associations of its employees. Because as I mentioned, this is 1004-B. Upon presentation of evidence, the supervisory organization represents a majority of supervisors. That an organization represents at least 20% of postmasters or that a managerial organization represents a substantial percentage of managerial employees, such organizations shall be entitled to participate directly. And then there are these parentheticals that I left out on that reading. Supervisory organization represents a majority of supervisors. That an organization, other than an organization representing supervisors, represents at least 20% of postmasters. Implication to me, clear, unmistakable implication of the parenthetical is that an organization that represents supervisors could include postmasters. Because they're basically saying if you're postmasters and you want legitimate representation, if you're on your own, you have to have 20% of postmasters. If you're folded in with an organization representing supervisors, that limitation, that threshold does not apply. You can just be part of a supervisory organization representing a majority of supervisors and whatever portion of postmasters or managers want to be part of it. And so, too, on the third clause, a managerial organization, other than an organization representing supervisors or postmasters, which have their own membership thresholds that we just told you about, managers can be part of an organization and the Postal Service will have to consult with an organization that represents a substantial percentage of managerial employees. Why is that not the clear and, in fact, only way to read the statute? Because if what they wanted to say was these three groups can have mutually exclusive organizations and they have to be specific to these job categories and we'll talk to them, that would be way easier to say in a different way. The only reason it would be done in this way is if they're nested in the way I mentioned. So the statute is certainly not the model of clarity, Your Honor, and we recognize that. That being said, we think a couple features of the statute point in the opposite direction, and it's certainly not the case that the only reasonable reading of the statute is that it's nested. So there's a couple things. So one, as Judge Wilkins pointed to earlier, is that second parenthetical that says, other than an organization representing supervisors or postmasters, which seems to suggest a distinction between an organization representing supervisors and an organization representing postmasters. And then second, and more broadly, is that this provision is the only reason to enact it the way that Congress enacteded it, is as recognizing that there are sort of supervisory, postmasters, and managerial organizations and that the interests of those employees may conflict and the purposes of effective consultation may not be served by allowing the same organization to represent both. So it's your position also that the intervener who intervened in your favor, which purports to represent managers, is illegitimate as a representative of those managers as well. So, Your Honor, the statute sort of carves out managerial organizations as a separate organization. Yeah. And under your reading. Right. My understanding is that, as Ms. Graber said, there has not ever been a managerial organization. There is not a managerial organization. And in recognition of that reality, my understanding is that the Postal Service has been willing to consult with sort of non-managerial organizations with respect to their managerial members. Well, there's also never been a separate postmasters organization. There's a postmasters and managers organization. Right? There's a postmasters and managers organization. And there's the National Association of Postal Supervisors, which purports to represent all three tiers to the extent they want to be represented by it. So your view is that the postmasters and managers, that the Postal Service actually cannot negotiate with them about the managers because of the way you read 1004B. So there's a difference, Your Honor, in our view between who the Postal Service may consult with an organization about and who an organization is entitled to be consulted about. And I think as a practical accommodation, the Postal Service has traditionally been willing to consult with NAPS or with UPMA to the extent that those organizations represent managers or claim managers as members. So there, it really doesn't matter that there's a conflict of interest between the postmasters and the managerial employees under their purview who helped them run the post offices, whereas there is a conflict that would prevent reading of the statute as establishing these organizations as NAPS did. I don't think that's necessarily the case, Your Honor. I think the Postal Service's view is that, and I don't know what would happen or what the Postal Service's view would be if there were a managerial organization, but rather than cutting off their managerial employees from any consultation whatsoever, the Postal Service has been willing to make an accommodation, even if that accommodation is not one to which NAPS or UPMA are entitled by the statute. We've really, we've really, I'm sure, kept you longer than you anticipated. I want to make sure that my... I'd like to ask one question. How does the Postal Service think that a managerial employee is defined and can be distinguished between a supervisor? So the statute, my understanding is, does not define managerial as distinct from supervisors. And I think because there is no sort of separate managerial organization, I don't know if the Postal Service has ever had to articulate a clean dividing line beyond sort of the plain text difference between supervisor and manager. And so that's just not an issue that I know what the Postal Service has articulated in understanding what that understanding is. All right. Thank you. Thank you, Ms. Kraber. We, I don't believe you have any rebuttal time because we kept you up for more than your allotted time, but we'll give you two minutes for rebuttal. Thank you, Your Honor. And I'll do my very best to stay within those two minutes. There are three main points I want to make sure I hit. The first is that the 1979 NAPS decision was very clear that it is not just that the Postal Service must consider the statutory factors, but that it must fulfill them. So it is not enough for the Postal Service to allege, by the way, drawing inferences in its favor from the complaint, that it has given good faith consideration. The second point I want to hit is regarding pay comparability. What NAPS has alleged is that the Postal Service engaged in a post hoc survey after it had already implemented the 2016-2019 or established the 2016-2019 pay package. It did a post hoc survey of only eight of 1,000 positions. And even for those eight positions, that survey could not allow it to fulfill the statutory mandate because 101C and 1003A refer to rates and types of compensation and compensation and benefits, telling the Postal Service to look at total compensation. And the Postal Service never studied total compensation for any position. And the court cannot simply allow the Postal Service to draw inferences in its favor that it must have because it has unfled internal expertise. Third, regarding this issue of the headquarters and area employees, we do not share the Postal Service's understanding that any 2016-2019 pay package covered the headquarters and area employees represented by NAPS. And under 1004E, the Postal Service was required to issue a pay package and consult with NAPS during a certain period of time after it issued the pay package for the collective bargaining groups. I do want to make sure I point the court to paragraph 57 of our complaint, where we allege that the employees represented by NAPS that the Postal Service has refused to recognize include employees who perform both supervisory and managerial responsibilities. And just to wrap up here, the Postal Reorganization Act anticipates and desires all supervisory and managerial employees to have representation, and thousands of postmasters and headquarters and area and other supervisory and managerial employees have chosen NAPS as their representative, and we ask this court to allow them to do so. Thank you. Thank you. We'll take the case under advisement. Thank you both for your energetic responsiveness to our questions.
judges: Pillard, Wilkins, Edwards